BLANCHE, Judge.
Defendant-appellant, C & M Properties, Inc., appeals from an adverse judgment of the trial court- ordering it to pay $5,682.57 to plaintiff-appellee, Toxie Craft, for civil engineering fees due under an oral contract. Suit was originally filed against Charles A. Hansbrough, but by amended petition C & M Properties, Inc., was named as an additional defendant. Judgment, however, was rendered only against C & M Properties, Inc. We affirm.
In October of 1967 plaintiff and Charles Hansbrough, as an officer and agent of the defendant corporation, entered into a verbal agreement whereby plaintiff was to perform certain engineering services in connection with the development of Zachary Estates Subdivision, Second Filing. The property was located in East Baton Rouge Parish near the East Feliciana Parish line. At the time the contract came into being the Town of Slaughter, located in East Feliciana Parish, was supplying gas and water to the general area of the proposed subdivision. The parties originally agreed that plaintiff’s fee would be eight percent of the total construction cost of the project. However, in this suit plaintiff seeks only one-half of the fee because the project was never completed.
After the oral contract was entered into, plaintiff began work and by July of 1968 had obtained the approval of the Parish Department of Public Works and the State Board of Health for a proposed lay-out of water and gas lines tying into existing service. At that time, however, it became obvious that the Town of Slaughter had not yet agreed to furnish water and gas to this proposed subdivision. In September of 1968, after a consultation with Mr. Hansbrough about the situation, plaintiff sent his son, Toxie Craft, Jr., who was em *543 ployed by him as an engineer, to a Slaughter Town Council meeting to request that a supply of water and gas be furnished. This request was denied because the Council felt an additional subdivision would overload their system. Because of this denial of water and gas service, defendant was unable to obtain interim financing and the project was abandoned. The present suit was then instituted by plaintiff, and the defendant defended the suit on the theory that plaintiff was obligated under the contract to obtain the water and gas source from the Town of Slaughter.
The trial court, however, awarded $5,682.57 to plaintiff, finding that it was not the sole obligation of the engineer to locate a supply of water and gas. The court found that the water and gas aspects of the project never constituted an engineering problem as such but involved a problem of supply by the utility company, the Town of Slaughter. The sufficiency of the plans for the subdivision, as well as for those dealing with gas and water lines, was never an issue.
The defendant contends its cause for entering into the contract was the completion of the subdivision. Since plaintiff did not obtain the water and gas supplies, the subdivision could not be completed and its cause fell, relieving it of the obligation to pay. LSA-C.C. Art. 1896 [1] is cited in support of defendant’s contention.
As the trial judge pointed out, we are dealing here with an oral contract where all of the rights, duties and contingencies existing between the parties were not enumerated. The trial judge also found that both parties entered into the contract on the assumption that there was no water supply problem. Our review of the evidence shows that it was not until the plaintiff had completed all of the engineering plans and specifications and financing of the construction was being sought that the question of the water supply became an issue. It was also shown that one of the engineer’s principal duties and objectives in connection with the contract was the preparing of plans and specifications for the purpose of obtaining governmental approval of the proposed plans. Concerning the preparation of the plans and specifications, it was normal procedure for the engineer to notify the authorities of the Parish of East Baton Rouge of the proposed construction. It was also shown that the public utilities were usually notified of the proposed subdivision when the preliminary plans of the subdivision were forwarded to them by the Parish Department of Public Works. The Department of Public Works notified the utilities of said plans for informational purposes in order that negotiations could be conducted between the utilities and the owner for the furnishing of water and gas to a subdivision. However, in this case the Town of Slaughter, being outside the Parish of East Baton Rouge and located in the Parish of East Feli-ciana, was not notified by the East Baton Rouge Parish authorities. Additionally, neither the owner nor the engineer notified the Town of Slaughter of the proposed plans until after all of the engineer’s plans had been completed, despite the knowledge of both parties that the Town would furnish the water and gas supplies. The furnishing of water and gas by utilities outside the parish was an unusual situation rarely encountered by an engineer in the preparation of plans and specifications for a subdivision. Whether mere notification of the Town of Slaughter by the engineer would have brought knowledge of the problems concerning the adequacy of the water supply when only the preliminary plans had been drawn is a matter of speculation. We are convinced that the parties contracted on the assumption that the water supply would be available, as during *544 their preliminary inspection of the construction site they observed existing water lines to an adjoining subdivision.
The plaintiff and Mr. Sam Du-pree, an expert engineer called by him as a witness, both testified that it was not the duty of the engineer to secure adequate utilities for such a project but that it was the duty of the owner to negotiate with the utility companies for the furnishing of utilities. There is no evidence in the record to show that the engineer had such a duty. We do not find that the obligation imposed on the engineer by the nature of his agreement to perform engineering services, insofar as it concerned the obtaining of approval of the subdivision by governmental authorities, carried with it an inherent obligation to ascertain the availability of utilities. We further do not find that the plaintiff’s effort to obtain the approval of water and gas supplies for the subdivision from the Town of Slaughter was an admission that such a duty was imposed on him under his contract with defendant. From our review of the record, we conclude that the obligation of the engineer to perform engineering services for the owner does not impose a duty upon him to ascertain the availability of utilities for the project. On the contrary, the record reflects that such was, in fact, the responsibility of the defendant owner.
Defendant argues:
“In the instant case, defendant urges that Article 1896 of the Civil Code is applicable in that he was in error supposing that the expert engineer would do the necessary work to obtain preliminary approval of the subdivision, which work included notification to the public utility company (Town of Slaughter). Had he known he could not rely upon the expert with whom he contracted, he would not have contracted.” (Defendant’s Brief, p. 5)
Such an argument begs the question, for, as noted above, the obligation of the engineer to perform said services does not impose a duty upon him to determine the availability of utilities. Article 1896 of the Civil Code relied upon by defendant concerns the cause for making contracts and the failure thereof when they are contracted in error. No doubt such services were contracted for by defendant in satisfaction of its motive to market the property as a subdivision, and the services of an engineer were necessary for that purpose. The record does not reflect that there was any failure of cause or that there was any error upon which their contractual obligations were entered into. The defendant owner contracted for the engineering services and obtained such services from the plaintiff engineer.
For the above reasons, the judgment of the trial court is affirmed, at the cost of de fendant-appellant.
Affirmed.

. LSA-C.C. Art. 1896 states:
“By the cause of the contract, in this section, is meant the consideration or motive for making it; and a contract is said to be without a cause, whenever the party was in error, supposing that which was his inducement for contracting to exist, when in fact it had never existed, or had ceased to exist before the contract was made.”